* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 * * * * * * * * * * * STIPULATIONS
1. The Parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The employee's average weekly wage at all relevant times was $500.00.
4. The employee sustained injuries on or about December 6, 1996 and February 2, 1997. Injuries on February 2, 1997 are compensable.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a 53-year-old female.
2. Plaintiff graduated from high school and has taken Dale Carnegie courses in restaurant management and taken basic computer courses. Plaintiff worked for Burger King four years as an assistant manager prior to being promoted to a first assistant manager. Plaintiff sustained two injuries while at work. The first was not accepted and the second was accepted as compensable. The first injury was to plaintiff's back and shoulders while at work on December 6, 1996 while trading out industrial microwaves. Plaintiff lost her grip while holding a microwave and it slammed into her shoulder and wrenched her back. Plaintiff informed Mr. Don Berrywood and Ms. Sheila Evans of the accident.
3. Plaintiff was not directed for medical treatment. On December 16, 1996, plaintiff sought medical treatment in the emergency room at Brunswick Hospital where she was diagnosed with leg and back pain and kept out of work for two days. The hospital referred plaintiff to Dr. Leighton for follow up care.
4. Dr. Leighton examined plaintiff on December 20, 1996 and diagnosed her with lumbar strain/sprain. Dr. Leighton prescribed Indocin (50 mg) and physical therapy. Plaintiff returned to Dr. Leighton on January 9, 1997. Dr. Leighton changed her medication to Relafen and requested that she follow up in six weeks.
5. Plaintiff's second injury was on February 2, 1997, when she tripped and fell while making the bank deposits for the restaurant. Plaintiff injured her knee, left hand, neck and back in the fall. Plaintiff reported her injury and finished out her shift. Plaintiff could not leave work because there was no one to replace her. She was instructed to seek treatment with the Urgent Care rather than the emergency room. Plaintiff went for treatment the following day. Defendants accepted plaintiff's claim relating to the February 2, 1997 injury, and plaintiff continues to receive temporary total disability benefits for this injury.
6. Plaintiff returned to regular duties following the 1996 accident prior to being injured on February 2, 1997.
7. Following the fall on February 2, 1997, plaintiff reported to Urgent Care. They instructed her to follow up with Dr. Leighton. Dr. Leighton saw plaintiff on February 5, 1997 and diagnosed her with a contusion to her right knee, sprain to her left shoulder, and sprain/contusion to her left wrist. Dr. Leighton also commented on plaintiff's back injury from December 1996. He instructed her to treat with Dr. Graybar, a chiropractor. Dr. Leighton kept plaintiff out of work through February 6, 1997 and released her to return to work on February 7, 1997, "symptoms permitting".
8. Plaintiff returned to Dr. Leighton on February 17, 1997 with continued complaints of back pain and pain in her left hand. Dr. Leighton examined plaintiff and indicated in his notes that employer was not complying with his restrictions for plaintiff. Dr. Leighton placed Plaintiff in a splint for her hand and prescribed Relafen.
9. The carrier commenced payment of temporary total disability benefits on February 3, 1997. Plaintiff continued treatment with Dr. Leighton for back and left hand complaints. A bone scan indicated plaintiff had a left scaphoid fracture.
10. Plaintiff continued to receive temporary total disability benefits until she was released to work on June 6, 1997 with restrictions and limitations. Plaintiff did not work the same amount of hours; therefore, the carrier commenced payment of temporary partial disability benefits. Plaintiff treated with Dr. Leighton through August 1997. Dr. Leighton released her with permanent light duty restrictions.
11. Defendants arranged for plaintiff to be evaluated by Dr. Mark Rodgers with Coastal Orthopaedics for an independent medical examination. Dr. Rodgers indicated that plaintiff was not at maximum medical improvement and that work restrictions should be determined by a functional capacity examination.
12. A new owner bought defendant-employer and elected not to continue plaintiff's employment on a light duty status. Plaintiff was terminated in October 1997 while still working under restrictions.
13. Plaintiff was not immediately paid temporary total disability benefits upon her termination. Payment of benefits was not made until November 1998. Defendants filed a Form 62 on January 7, 2000 indicating that temporary total disability benefits were reinstated as of October 27, 1997. Plaintiff's car was repossessed due to financial hardships from not having any income from October 1997 through November 1998.
14. Plaintiff was referred to Dr. Toni Harris for pain management. Dr. Harris treated plaintiff from February 1998 through February 2003. Dr. Harris recommended biofeedback sessions with Dr. Christy Jones, pool therapy, and epidural injections.
15. Plaintiff spoke to Dr. Harris regarding her pain management regime, which included medication. Plaintiff did not agree with taking medications as she thought it was masking the problem and not making it better. Plaintiff had a disagreement with Dr. Harris and for that reason did not continue treatment with Dr. Harris. Plaintiff only took Motrin prescribed by her family doctor, Dr. Cohen. Plaintiff did not wish to return to Dr. Harris and wanted to see another specialist with regards to her back pain as she felt the doctor-patient relationship has been compromised beyond repair. This was confirmed by the deposition testimony of Dr. Harris. Dr. Harris testified that she had nothing further to offer plaintiff even though she had not seen her in several years. Plaintiff is paying for her treatment with Dr. Cohen.
16. The carrier would not authorize any further treatment after Dr. Harris released her.
17. On September 30, 1999, plaintiff underwent a Functional Capacity Examination indicating plaintiff could work at the sedentary to light duty level. Defendants referred plaintiff's case to Ms. Pat Bell, a vocational rehabilitation specialist. Ms. Bell was replaced by Mr. Alan Ford who was replaced by Mr. Bob Manning, the current vocational specialist.
18. Plaintiff was released to work in sedentary, sit down types of jobs. Plaintiff's vocational skills relate to the restaurant industry. Plaintiff enrolled in computer classes at the local community college at the recommendation of Mr. Manning. Plaintiff is transported to her vocational meeting and interviews by either her parents or by borrowing a family member's car.
19. Mr. Bob Manning testified at the hearing that plaintiff is complying with vocational rehabilitation activities by putting in applications and contacting leads that he has provided to her. Mr. Manning testified that he had been working with plaintiff for over two years in trying to find employment. Mr. Manning testified that he is not aware of any overt acts by plaintiff to sabotage her job search. Mr. Manning testified he hoped to "work a miracle" in terms of finding employment suitable for her vocational training and physical restrictions and limitations.
20. Mr. Manning stated that it is going to be difficult to place plaintiff in a job with a $500.00 a week salary. The labor market survey performed in 2004 indicated that the highest paying job would pay $8.00 an hour. Mr. Manning again reiterated that plaintiff has been complying with her job search. Plaintiff is currently out of work and is receiving temporary total disability benefits. She is not receiving medical treatment authorized by the carrier.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On or about December 6, 1996 and February 2, 1997, the plaintiff sustained compensable injuries by accident arising out of and in the course of her employment with Defendant. N.C. Gen. Stat. § 97-2(6).
2. As a result of her compensable injuries by accident on or about December 6, 1996 and February 2, 1997, plaintiff is entitled to continue to receive temporary total disability compensation. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to receive medical treatment reasonably necessary to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
4. Plaintiff has cooperated with vocational rehabilitation efforts. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's counsel is entitled to a reasonable attorney's fee of twenty-five percent (25%) of the total compensation awarded herein to plaintiff. As no past due benefits are owed, every fourth check shall be forwarded by defendant directly to the plaintiff's attorney.
2. Defendants shall provide for all related medical compensation that was or is reasonably necessary to affect a cure, give relief, or lessen the period of plaintiff's disability. Defendants shall authorize further pain management treatment with a physician other than Dr. Harris.
3. Defendants shall bear the costs of this proceeding, including paying an expert witness fee of $300.00 to Dr. Paul S. Cohen and $285.00 to Dr. Toni Harris, if not already paid by prior order.
4. Plaintiff shall continue to cooperate with any reasonable request made by the defendants concerning vocational rehabilitation.
This the 18th day of May 2006
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER